# Exhibit B



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

LEICESTER BRYCE STOVELL
    Vs.                                C.A. No.      2013 CA 002985 B
LEBRON R. JAMES

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order.  As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order.   Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to:  Judge THOMAS J MOTLEY
Date:   April 29, 2013
Initial Conference: 9:30 am, Friday, August 23, 2013
Location:   Courtroom 212
           500 Indiana Avenue N.W.
           WASHINGTON, DC  20001                               Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

13 - 0002985

LEICESTER Bryce STOVELL
_____
Plaintiff

vs.                                          Case Number _____

LEBRON R. JAMES
_____
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

_____                    _Clerk of the Court_
Name of Plaintiff's Attorney

631 12th St NE                         By  _____
_____                         Deputy Clerk
Address

Washington, DC 20002
_____

(202) 302 - 0657                       Date   4/29/2013
_____
Telephone

如需翻译，请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-682-2700) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION

RECEIVED
Civil Clerk's Office
APR 2 9 2013
Superior Court of the
District of Columbia
Washington, D.C.

LEICESTER BRYCE STOVELL            )

631 12th Street, N.E.            )

Washington, D.C. 20002            )            13 - 0 0 0 2 9 8 5

      Plaintiff,            )            CIVIL ACTION NO.

       v.            )            JURY DEMAND

LEBRON R. JAMES            .            )

c/o John A. Burlingame, Esq.            )            DEFAMATION, FALSE LIGHT

Counsel to LeBron R. James            )

Squire, Sanders & Dempsey LLP            )

1200 19th Street, N.W.,   Suite 300            )

Washington, D.C. 20036            )

      Defendant.            )

............................................................

## COMPLAINT

### I.    STATEMENT OF FACTS.

1.    Plaintiff Leicester Bryce Stovell, proceeding *Pro Se*, brings this civil action against Defendant LeBron R. James. Plaintiff is a resident of the District of Columbia. Defendant is a resident of Florida. Based on knowledge and information and belief, Plaintiff Stovell alleges the following:

2. This action arises out of Defendant's statements through Sports Illustrated ("SI") that were published and distributed nationally *via* SI's April 30, 2012 edition, less than one year ago.

3. This Court has jurisdiction herein because Plaintiff is a resident of the District of Columbia. Although a resident of another State, Defendant's action also affected Plaintiff here in the District of Columbia.

4. In the SI article, Defendant stated that his father had left his mother and him when he was a child, leading to a deprived childhood. In pertinent part, Defendant LeBron James stated the following:

> "My father wasn't around when I was a kid, and I use to always say, 'Why me? Why don't I have a father? Why isn't he around? Why did he leave my mother?' But as I got older I looked deeper though, 'I don't know what my father was going through, but if he was around all the time, would I be who I am today?'" James said. "It made me grow up fast. It helped me be more responsible. Maybe I wouldn't be sitting here right now."

4. Defendant LeBron James's statement was published a few days after the Plaintiff herein filed a Notice of Appeal with respect to the United Dtates District Court's March 29, 2012 final order dismissing Plaintiff's Complaint there, which had been filed with that court on the jurisdictional basis of federal diversity

jurisdiction of the state law claims there at issue.. In that case, Plaintiff alleged that Defendants therein, including LeBron James, had, *inter alia*, defamed Plaintiff herein in making statements to the effect that Defendant LeBron James's father had abandoned Defendant LeBron Jamesand his mother prior to the initiation of that law suit in 2010.

5.    Although the Plaintiff herein referred to Defendant's defamatory statements herein on appeal of that case to the United States Court of Appeals for the District of Columbia Circuit (U.S. Court of Appeals Case No. 12-7034), Plaintiff had not brought the defamation claims in that suit on the basis of the statements complained of herein. Thus, the dismissal of the defamation claims in the federal action do not affect this claim, which is for distinct statements of Defendant James that occurred after the alleged defamation had occurred that was a subject of the federal diversity action.

6. In the federal diversity action filed in 2010, Plaintiff herein also alleged that he likely is the father of Defendant LeBron James. In addition, Plaintiff alleged that Defendant LeBron James likely had falsified an August, 2007 DNA test to ascertain whether Plaintiff herein and Defendant herein are father and son because he, among other things, believes Plaintiff herein is his father.

7. Plaintiff also referenced a number of factors indicating he is Defendant's father, including recalling meeting Defendant's mother, Gloria James, in Akron, Ohio in March, 1984, at which time he alleges they had a sexual encounter, Defendant LeBron James's significant simialarity in appearance with Plaintiff, the alliteration in their names, which Plaintiff alleged apparently was intended by Defendant's mother as a concealed indication of Plaintiff's paternal status, and the fact that Defendant LeBron James seemingly had repeated the tradition of secretly alluding to Plaintiff as his father by naming his second son "Bryce," Plaintiff's middle name.

8. The federal diversity case received worldwide media attention. Many persons who know Plaintiff became aware of the case, as well as others. In addition, the reports often noted the similarity in appearance between Plaintiff Stovell and Defendant James. Thus, some persons hearing Defendant LeBron James's statements in the widely distributed Sports Illustrated article (which was touted in extensive pre-publication publicity to the effect that in it Defendant LeBron James would "speak about his father") learned of the abandonment charge for the first time from the article and associated the abandonment charge with Plaintiff for the first time.

9. Moreover, others who understood Plaintiff Leicester Bryce Stovell to be Defendanmt LeBron James's father by other means also were exposed to

Defendant LeBron James's statement in the April 30, 2012 SI article to the effect that his father had left him and his mother alone and destitute when he was a child, depriving him of a true childhood (and, presumably, child support as well). In this regard, the circumstances of this matter always has suggested that the Jameses have been telling selected other persons that Plaintiff is Defendant LeBron James's father. Thus, attached at Exhibit 1 is the sworn, notarized Affidavit of Rolando Pharr ("Pharr") a resident of Ohio who knew Defendant LeBron James's mother, Gloria James, while Defendant LeBron James was an infant.

10. Pharr swears under penalty of perjury that Gloria James told him at that time that Plaintiff herein is, in fact, Defendant LeBron James's father. Thus, persons who associated Plaintiff with being Defendant LeBron James's father from reading media reports about the federal diversity action who understood Defendant Lebron James to be referring to Plaintiff in the April 30, 2012 SI article were joined by persons whom the Jameses had told that Plaintiff Stovell is Defendant LeBron James's father, thus leading them to believe that Plaintiff herein abandoned Defendant Lebron James and his mother when he was a child.

11. Defendant LeBron James's published statement is false. Plaintiff did not leave Defendant LeBron James or his mother alone and destitute, or otherwise. Defendant Gloria James never told Plaintiff that Defendant LeBron James is his son. Plaintiff also never otherwise knew of or suspected the relationship until just before he contacted Defendant's attorney in 2007. At that time Plaintiff believes

Defendant LeBron James personally falsified the DNA test they'd agreed to take then to ascertain – at least for the Plaintiff herein - whether the father/son relationship exists between the two.

12.  The circumstances also indicate that Defendant LeBron James does not even believe that his father actually left him and his mother.  In this regard, Plaintiff has noted the lapse in time between when Defendant LeBron James became world famous and when Plaintiff approached Defendant's Counsel in 2007 as indicating that Defendant knew Plaintiff had no suspicion of paternity prior to then, consistent with the fact that Defendant's mother had not told Plaintiff he was a father (but, in fact, had misled him).  Thus, Defendant's naming of his second son as Bryce (Plaintiff's middle name)  under these circumstances indicates Defendant LeBron James, who reportedly does not want a real (or "biological") father, was convinced Plaintiff did  not even know he's Defendant LeBron James's father, and that he could do so without arousing Plaintiff herein's suspicions.

13.    Defendant LeBron James's statements complained of herein have harmed Plaintiff. In this regard, it holds Plaintiff out to ridicule among persons positioned to make the connection between Plaintiff and Defendant LeBron James's statement, and there appears to be many. Potential clients of Plaintiff in his law practice even have referenced Defendant LeBron James's false paternal abandonment allegation as a reason for not retaining Plaintiff for certain cases. In addition, the statement holds Plaintiff out to public ridicule on its face.

II.                    **FIRST CAUSE OF ACTION**

(Defamation)

14.  Plaintiff restates the allegations of paragraphs 1 through 13 of the Complaint as if fully rewritten herein.

15. Defendant LeBron James msde untrue statements regarding Plaintiff through the April 30, 2012 issue of SI to the effect that his father had left him and his mother alone and destitute when he was a child; that he, in effect, had abandoned them.

16.  These statements were made by Defendant LeBron James to SI to be, and were, distributed, at least nationally.  These statements, thus, were made to third parties, and without privilege.

17.  Defendant LeBron James's statements appear to have been intentionally false. His level of fault in making the statements was at least negligent.

18.  The statements were actionable as a matter of law and/or gave rise to special harm to Plaintiff.

III.                   **SECOND CAUSE OF ACTION**

(False Light)

19.  Plaintiff restates the allegations of paragraphs 1 through 18 of the Complaint as if fully rewritten herein.

20. Defendant LeBron James falsely portrayed ~~Defendant~~ *Plaintiff* to the public as an abandoner of his child, unwilling to share in his support and upbringing. It even appears that Defendant LeBron James is accusing his father of a crime. Defendant LeBron James was understood by members of the public to be referring to the Plaintiff.

21.  Defendant LeBron James's false portrayal of Plaintiff was intentionally false, or at least negliogently and/or recklessly false.

22. Plaintiff was injured by Defendant's portrayal of him in a false light.

IV.                          **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

(a)    As to the First Cause of Action,  $500,000 in monetary damages,

(b)    As to the Second Cause of Action, $500,000 in monetary damages,

Together with punitive damages, plus attorney's fees, interest, costs and such other relief this Courty deems appropriate, as justice may require.

## JURY DEMAND

Plaintiff also hereby demands a trial by jury.

Respectfully submitted,

Dated: April 29, 2013

Leicester Bryce Stovell, Esq.

Attorney for Plaintiff, *Pro Se*

D.C. Bar No. 488149

631 12th Street, N.E.

Washington, D.C. 20002

Tele: (202) 302-0657

Email: Leicester1@aol.com

## Certificate of Service

I filed with the Clerk of the Superior Court of the District of Columbia by hand and served upon Defendant LeBron James the foregoing Complaint by certified US mail, postage prepaid, care of his Counsel, John A, Burlingame, Esq., Attorney to LeBron James, at Squire, Sanders & Dempsey LLP, 1200 19th Street, N.W., Suite 300, Washington, D.C. 20036 this 29th day of April, 2013.

Leicester Bryce Stovell, Esq.

Attorney for Plaintiff, *Pro Se*

DC Bar No. 488149

631 12th Street, N.E.

Washington, D.C. 20002

Tele: (202) 302-0657

Email: Leicester1@aol.com

EXHIBIT 1

to Complaint

## DECLARATION OF ROLANDO PHARR

I, Rolando Pharr, swear or affirm that: the following statements are true. They are based on actual events and my recollection of a conversation I had with Gloria James (mother of NBA star LeBron James). Part of that conversation was about LeBron James' father.

1. My name is Rolando Pharr. I am 52 years old and I currently reside in Akron, Ohio.

2. In mid December 1984, while working at the Jeans West clothing store at Public Square in Cleveland, Ohio, I was offered the assistant managers position at The Bottom Half Clothing store inside Rolling Acres Mall in Akron, Ohio. Both stores were owned by Edison Brothers Apparel. I accepted the position and started working at The Bottom Half the last weekend of 1984.

3. I met Gloria James a few weeks after I started at The Bottom Half. She came in and asked me if we were hiring. She introduced herself as Nikki but soon revealed her real name to be Gloria James. I told her we weren't hiring at the time but to put in an application and check back periodically. She informed me that she had already put in an application when my manager Mike Smolinski was working. She just wanted to verify that we really weren't hiring.

4. Over the next few weeks, Gloria James would stop in and say hello. On at least one of those occasions she had LeBron with her. She let me see him and as I do with every baby I meet, I introduced myself and shook his hand.

5. Right around this time my manager informed me that he would be off for a while. He was a diabetic, had cut his leg and it was grossly infected. He told me that he was going to be hospitalized and then recovering at home. There was no set time frame for when he would return. The regional manager, Charles Krause, promised to get me some help, but he didn't.

6. The next time Gloria James stopped in I explained the situation and asked her if she would be interested in helping me sometimes. She was. We agreed that she would try to come up on Tuesdays or Wednesdays and every Saturday. She would run errands for me to the bank, our sister store Jeans West and pick up my lunch, usually from Friendly's or Der Dawg Haus. She would also help clean the store. I was going to pay her cash out of my pocket. She would be there no more than two hours per day. What I usually did was give her $20.00 to pay for my meal and she would keep the change.

7. During the first extended conversation that Gloria James and I had the subject of LeBron's father came up. We were standing by the counter near the front of the store, basically just talking and getting to know one another. I lived in Akron off and on from 1978 to 1983 so I knew a lot of people around the city. I also have numerous relatives in Akron. Through our conversation I found out we knew a few of the same people.

8. I was asking the majority of the questions. I had a friend in Cleveland, Ohio named Paul James. I asked Gloria James did she know him or his family. She said no.

9. I asked Gloria James about LeBrons' father. I wanted to see if I knew him. She assured me that I didn't. I remember telling her "You don't know who I know." She told me I didn't know him because he lived in Washington D.C. I asked her what she knew about Washington D.C. She told me that she visited there fairly often.

10. I asked Gloria James what was LeBrons father's name. The name she told me was very unique and uncommon. I clearly remember saying "that's a fucked up name". I told her it was a good thing that she didn't name LeBron a Junior after his dad because he would be fighting in school every day. She and I both laughed.

11. I honestly could not have recalled LeBron's fathers name in a general conversation before 2010. In 2010, I came across information about a Washington D.C. attorney who claimed that he was LeBron James' father. After hearing and seeing the name Leicester Bryce Stovell, I remembered that was the unique and uncommon name that Gloria James said was LeBrons father. It is the name I said was a "fucked up name". It is also the name that I said LeBron would have been fighting everyday had he been named a Junior after it.

12. I remember asking Gloria James if she liked the Chrysler LeBaron and if that was where she got LeBrons name from. She told me that she did like the LeBaron but that is not where she got LeBrons name from . She explained that LeBron's name was a combination of his fathers first and middle names. She actually took the time to spell out the fathers name and show me exactly how she came up with LeBron. Leicester Bryce is the name Gloria spelled out for me when she explained how she created the name LeBron. I told Gloria that I like the name LeBron and the way she came up with it.

13. At some point during that conversation I asked Gloria James "How old is LeBron's dad?" She told me that he was older than I was. I was 24 at the time.

14. I have taken and passed 2 polygraphs based on other events and conversations I had with Gloria James during that same time period. See attached Exhibits A and B.

Further affiant saith not.

I SWEAR OR AFFIRM TO UNDER PENALTY OF PERJURY THAT THE ABOVE
AND FOREGOING REPRESENTATIONS ARE TRUE AND CORRECT TO THE
BEST OF MY RECOLLECTION, KNOWLEDGE, AND BELIEF.

4/24/2013
Date

Rolando Pharr
Rolando Pharr

STATE OF OHIO

COUNTY OF CUYAHOGA

I, the undersigned Notary Public, do hereby affirm that Rolando Pharr personally
appeared before me on the 24 day of April, 2013, and signed the above
Affidavit as his free and voluntary act and deed.

Notary Public

BRIAN F. CHAMBERS
NOTARY PUBLIC, STATE OF OHIO
Recorded in Cuyahoga County
My Comm. Expires 04/25/2017

- 3 -

# SECURITY & POLYGRAPH CONSULTANTS, INC.

25200 Miles Road • Cleveland, Ohio 44146
(216) 831-3447 Fax (216) 360-9218
(800) 586-3884 (Ohio Only)

October 18, 2010

Rolando Pharr

Cleveland, Ohio

RE:   Rolando Pharr
       DOB 1-29-61

To whom it may concern:

On Friday, October 15, 2010 at 10:00 A.M. Rolando Pharr was voluntarily present at our office for a specific issue polygraph examination-interview, regarding specific events that occurred with Lebron James when he was three months old.

Prior to the examination-interview, Rolando Pharr signed a waiver / release form stating he was taking the examination-interview voluntarily. This signed form is incorporated in our case files. The test was administered by Keith Lowry, Certified Examiner.

Mr. Lowry, President of Security and Polygraph Consultants, Inc., is a graduate of Zonn Institute of Polygraph, Miami, Florida. He received his certification through the American and Ohio Polygraph Associations and currently maintains membership in both organizations. Mr. Lowry has a previous law enforcement background and currently conducts examinations for over thirty local and federal law enforcement agencies.

Mr. Lowry's extensive experience as a Polygraph Examiner are diverse in nature. He has done extensive testing for Prosecutors and Police Agencies, Criminal Defense Attorneys, the Public Defender Office, Alcohol Tobacco & Firearms, Drug Enforcement Agency and the Ohio Attorney General's Office. Mr Lowry has advanced and specialized training in the investigation, interviewing, interrogation and testing of pedophiles, sexually violent offenders, and homicide suspects, to name a few. He also has specialized and advance training in question formulation, chart interpretation and counter measure recognition. Constantly continuing his education, Mr. Lowry attends professional seminars at both the state and national level regularly and has conducted over 20,000 examinations to date.

## PRE-TEST INTERVIEW

An extensive pre-test interview was conducted and questions concerning this matter were discussed. Mr. Pharr stated the purpose for taking a polygraph examination was to verify to LeBron James, that a series of events took place, that may have affected the course his life has taken and will take in the future. Mr. Pharr said, he is not implying that Mr. James has become what he is due to these events, only that he is simply stating the facts. Please refer to the attached "Christening Story" for further details.

Proper test questions were formulated at this time.

Exhibit
A

• Drug Screening        •Psychological Testing
 • Specific         • Pre-employment        • Periodic

Rolando Pharr
October 18, 2010
Page 2

## PROCEDURE

A Stoelting Ultrascribe Model No. 8044-2882, Four channel polygraph was used in a detection of deception technique. This technique involves the recording of emotional responses to normal, control, relevant and irrelevant questions involving the measured changes in blood pressure, pulse rate, respiration and electrodermal phenomenon.

## POLYGRAPH EXAMINATION

A polygraph examination was conducted using the formulated questions. Two charts were generated and examined. There were indications of truthfulness on the polygram tracings.

## CONCLUSION

It is my professional opinion that Rolando Pharr was truthful throughout the polygraph examination-interview .

Respectfully submitted,
SECURITY & POLYGRAPH CONSULTANTS, INC.

Keith H. Lowry
Certified Examiner

Exhibit A

Rolando Pharr
October 18, 2010
Page 3

## RELEVANT QUESTION FORMAT

Do you intend to lie to me during this test ?
   Answer: No

Regarding this issue do you intend to answer truthfully each question about that ?
   Answer: Yes

When you were four or five years old did boxing legend Cassius Clay (Muhammad Ali) pick you up and carry you around ?
   Answer: Yes

Were you the Assistant Manager at the Bottom Half clothing store inside Rolling Acres Mall in Akron, Ohio from late December, 1984 to April or May 1985 ?
   Answer: Yes

Did you ever watch LeBron James while Gloria James ran store errands for you ?
   Answer: Yes

Did you raise LeBron James in the air " Kunta Kinte " style three separate times and say, " I christen thee the next Dr. J " each time ?
   Answer: Yes

Did the members of Free Afrika toast LeBron, " To the next Dr. J " after the second time you raised him up ?
   Answer: Yes

Did Gloria James witness the third time you raised LeBron in the air and said, " I christen thee the next Dr. J " ?
   Answer: Yes

Did you and Gloria James discuss the " Christening ", LeBron's NBA future and who Dr. J was ?
   Answer: Yes

Exhibit A



# SECURITY & POLYGRAPH CONSULTANTS, INC.

25200 Miles Road • Cleveland, Ohio 44146
(216) 831-3447  Fax (216) 360-9218
(800) 586-3884  (Ohio Only)

## POLYGRAPH WAIVER AND RELEASE

DATE: October 15, 2010

TIME IN: /0:00 A.M.

I, __Rolando Pharr__ do hereby voluntarily, without duress, coercion, promise of reward or immunity, agree and stipulate to take a polygraph (truth verification) examination, having had said technique explained to my satisfaction, I hereby release Polygraph Consultants, Inc., __Personal Issue__ and the examiner administering this examination from all claims resulting from, or arising out of this examination. I consent to the use of electronic recording devices in conjunction with said examination. I understand fully that I can terminate this examination at any time by so stating. To the best of my knowledge at this time I have no mental and/or physical condition which would prevent me from taking this examination.

PERSON BEING EXAMINED: _Rolando Pharr_      Rolando Pharr

WITNESSED BY: _____
(Examiner)

The examination now being over, I hereby certify that I took the same voluntarily, was well treated and remained of my own free will, knowing I could leave at any time. I also certify that there were no threats, promises, or harm done to me during the entire period I have been here, either in connection with the examination or my again signing this waiver/release form.

PERSON BEING EXAMINED: _Rolando Pharr_      Rolando Pharr

WITNESSED BY: _____
(Examiner)

TIME OUT: //:36 A.M./P.M.

> • Drug Screening        • Psychological Testing
> • Specific    • Pre-Employment        • Periodic

C:\Security&Polygraph\New&CorrectedForms\PolyWaiv&Rel

Exhibit A



# SECURITY & POLYGRAPH CONSULTANTS, INC.

25200 Miles Road • Cleveland, Ohio 44146
(216) 831-3447  Fax (216) 360-9218
(800) 586-3884  (Ohio Only)

March 9, 2012

Rolando Pharr                                    RE:        Rolando Pharr
                                                            DOB 1-29-61
Cleveland, Ohio

To whom it may concern:

On Tuesday, March 6, 2012 at 12:10 P.M. Rolando Pharr was voluntarily present at our office for a specific issue polygraph examination-interview, regarding a specific event that occurred between he and Gloria James ( mother of NBA star LeBron James ) when LeBron was three months old. Please refer to the attached "Christening Story " and the results of a polygraph examination interview given by this office on October 15, 2010

Prior to the examination-interview, Rolando Pharr signed a waiver / release form stating he was taking the examination-interview voluntarily. This signed form is incorporated in our case files. The test was administered by Keith Lowry, Certified Examiner.

Mr. Lowry, President of Security and Polygraph Consultants, Inc., is a graduate of Zonn Institute of Polygraph, Miami, Florida. He received his certification through the American and Ohio Polygraph Associations and currently maintains membership in both organizations. Mr. Lowry has a previous law enforcement background and currently conducts examinations for over thirty local and federal law enforcement agencies. Mr. Lowry's extensive experience as a Polygraph Examiner are diverse in nature. He has done extensive testing for Prosecutors and Police Agencies, Criminal Defense Attorneys, the Public Defender Office, Alcohol Tobacco & Firearms, Drug Enforcement Agency and the Ohio Attorney General's Office. Mr Lowry has advanced and specialized training in the investigation, interviewing, interrogation and testing of pedophiles, sexually violent offenders, and homicide suspects, to name a few. He also has specialized and advance training in question formulation, chart interpretation and counter measure recognition. Constantly continuing his education, Mr. Lowry attends professional seminars at both the state and national level regularly and has conducted over 20,000 examinations to date.

Exhibit
B

Rolando Pharr
March 9, 2012
Page 2

## PRE-TEST INTERVIEW

An extensive pre-test interview  was conducted and questions concerning this matter were discussed. Mr. Pharr stated his purpose for taking a second polygraph examination is to continue supporting the "facts" about LeBron's "Christening Story ". Mr. Pharr thinks that Gloria James will remember the financial arrangement they made. Mr. Pharr believes the polygraph results will verify the fact that a financial agreement was indeed made between he and Gloria James. Mr. Pharr also stated that he would like to have a face to face meeting with LeBron James.

Proper test questions were formulated at this time.

## PROCEDURE

A Stoelting Ultrascribe Model No. 8044-2882, Four channel polygraph was used in a detection of deception technique. This technique involves the recording of emotional responses to normal, control, relevant and irrelevant questions involving the measured changes in blood pressure, pulse rate, respiration and electrodermal phenomenon.

## POLYGRAPH EXAMINATION

A polygraph examination was conducted using the formulated questions. Two charts were generated and examined. There were indications of truthfulness on the polygram tracings.

## CONCLUSION

It is my professional opinion that Rolando Pharr was truthful throughout the polygraph examination-interview .

Respectfully submitted,
SECURITY & POLYGRAPH CONSULTANTS, INC.

Keith H. Lowry
Certified Examiner

Exhibit B

Rolando Pharr
March 9, 2012
Page 3

## RELEVANT QUESTION FORMAT

Do you intend to lie to me during this test ?
    Answer: No

Regarding this issue do you intend to answer truthfully each question about that ?
    Answer: Yes

Did you tell Gloria James that LeBron James would be an NBA star ?
    Answer: Yes

Did you tell Gloria James that LeBron James would be a high flying player like Dr. J ?
    Answer: Yes

Did six members from the " Free Afrika " basketball team participate in LeBron's " Dr. J
Christening "?
    Answer: Yes

Was it agreed when LeBron became an NBA star, each person who participated in his " Dr. J
Christening " would be made a millionaire ?
    Answer: Yes

Was the agreement with Gloria James confirmed with a handshake ?
    Answer: Yes

Exhibit B



# SECURITY & POLYGRAPH CONSULTANTS, INC.

25200 Miles Road • Cleveland, Ohio 44146
(216) 831-3447   Fax (216) 360-9218
(800) 586-3884   (Ohio Only)

## POLYGRAPH WAIVER AND RELEASE

DATE: _____March 6, 2012_____

TIME IN: _*12:10*_ __P.M.__

I, _____Rolando Pharr_____do hereby voluntarily, without duress, coercion, promise of reward or immunity, agree and stipulate to take a polygraph (truth verification) examination, having had said technique explained to my satisfaction, I hereby release Polygraph Consultants___Personal Issue_____and the examiner administering this examination from all claims resulting from, or arising out of this examination. I consent to the use of electronic recording devices in conjunction with said examination. I understand fully that I can terminate this examination at any time by so stating. To the best of my knowledge at this time I have no mental and/or physical condition which would prevent me from taking this examination.

PERSON BEING EXAMINED: _*Rolando Pharr*__ *Rolando Pharr*_____

WITNESSED BY: _____
(Examiner)

The examination now being over, I hereby certify that I took the same voluntarily, was well treated and remained of my own free will, knowing I could leave at any time. I also certify that there were no threats, promises, or harm done to me during the entire period I have been here, either in connection with the examination or my again signing this waiver/release form.

PERSON BEING EXAMINED: _*Rolando Pharr*__ *Rolando Pharr*_____

WITNESSED BY: _____
(Examiner)

TIME OUT:_*2:35*_ A.M.
(P.M.)

• Specific          • Drug Screening          • Psychological Testing
          • Pre-Employment          • Periodic

Exhibit J

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION

LEICESTER BRYCE STOVELL )

       Plaintiff, ) CIVIL ACTION NO. 13-0002985

       v. ) JUDGE: Thomas A. Motley

LEBRON R. JAMES . ) Next Event: August 23, 2013

       Defendant. ) Initial Scheduling Conference

................................................

## PROOF OF SERVICE

I hereby affirm that I served upon Defendant LeBron R. James the Summons and Initial Scheduling Order, along with the Complaint, in the captioned case by certified US mail, postage prepaid, care of his Counsel, John A. Burlingame, Esq., at Squire, Sanders & Dempsey LLP, 1200 19th Street, N.W., Suite 300, Washington, D.C. 20036 on the 29th day of April, 2013. Attached to this Affidavit is the certified mail return receipt for this mailing, signed by an agent of defense counsel on May 1, 2013, confirming their receipt of the aforementioned documents. Another assistant to defense counsel also has confirmed to me orally by telephone their receipt of these documents at that time.

Respectfully submitted,

Dated May 8, 2013

Leicester Bryce Stovell

Plaintiff, *Pro Se.* D.C. Bar No. 488149

631 12th Street, N.E., Washington, D.C. 20002

Tele: (202) 302-0657; Email: Leicester1@aol.com

**EXHIBIT**



**SENDER:** *COMPLETE THIS SECTION*

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

LEBRON JAMES
C/O JOHN Burlingame Esp
Squire SAnders + Dempsey
1200 19th ST NW Suite 300
Washington DC 20036

2. Article Number
   *(Transfer from service label)*     7011 3500 0002 7918 7915

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X _____  ☐ Agent
                   ☐ Addressee
B. Received by ( *Printed Name* )   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☑ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.
4. Restricted Delivery? *(Extra Fee)*          ☐ Yes

UNITED STATES POSTAL SERVICE 

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Leicester Bryce Stovell, Esq
631 12th St., N.E.
Washington, D.C. 20002-5319

## Certificate of Service

I filed with the Clerk of the Superior Court of the District of Columbia *in person* and served upon Defendant LeBron James, care of his Counsel, John A, Burlingame, at Squire, Sanders & Dempsey LLP, 1200 19th Street, N.W., Suite 300, Washington, D.C. 20036, by US mail, postage prepaid, the foregoing Proof of Service of the Complaint with Exhibit this 8th day of May, 2013.

Leicester Bryce Stovell, Esq.

Plaintiff, *Pro Se,*  D.C. Bar No. 488149