LEICESTER BRYCE STOVELL,

   Plaintiff,

      v.

LEBRON R. JAMES,

   Defendant.

Civil Action No. 13-731 (CKK)

# MEMORANDUM OPINION
(September 1, 2013)

Plaintiff Leicester Bryce Stovell, an attorney proceeding *pro se*, filed suit against Defendant LeBron James in the Superior Court for the District of Columbia, alleging the Defendant defamed the Plaintiff and portrayed the Plaintiff in a false light through certain comments made by the Defendant in a story published in the April 30, 2012, edition of Sports Illustrated Magazine. The Defendant removed the action to this Court, and now moves for summary judgment on the grounds the Plaintiff's claims are time barred, and separately moves to dismiss both counts for failure to state a claim. Over a month after the briefing on the Defendant's motions were complete, the Plaintiff moved for leave to file a second amended complaint. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court finds the Plaintiff's proposed amendments to the operative complaint would not survive the pending motion for summary judgment. Accordingly, the Plaintiff's [23] Request for Leave to File the Verified Second Amended Complaint is DENIED, the Defendant's

---

[1] Def.'s Mot. to Dimiss, ECF No. [8]; Pl.'s Opp'n, ECF No. [17]; Def.'s Reply, ECF No. [18]. Def.'s Mot. for Summ. J., ECF No. [9]; Pl.'s Opp'n, ECF No. [16]; Def.'s Reply, ECF No. [19]. Pl.'s Req. for Leave to File, ECF No. [23]; Def.'s Opp'n, ECF No. [26]; Pl.'s Reply, ECF No. [27].

[9] Motion for Summary Judgment is GRANTED, and the Defendant's [8] Motion to Dismiss is DENIED AS MOOT.

## I. BACKGROUND

Plaintiff filed suit against the Defendant in 2010 alleging that he is LeBron James's biological father. *See generally Stovell v. James*, 810 F. Supp. 2d 237 (D.D.C. 2011). The Plaintiff asserted a number of claims arising out of allegations that both LeBron James and his mother Gloria have spread lies about Stovell's paternity, falsified the results of a paternity test which found the Plaintiff was not the Defendant's father, and made disparaging remarks regarding the Plaintiff. *Id.* at 240. The Court dismissed all of the Plaintiff's claims, including common law fraud and misrepresentation, defamation, breach of contract, and tortious interference with contract, for failure to state a claim. *Id.* at 251. The United States Court of Appeals for the District of Columbia Circuit summarily affirmed the dismissal of the Plaintiff's claims. *Stovell v. James*, No. 12-7034, 2013 WL 2393055 (D.C. Cir. Apr. 24, 2012).

The Plaintiff initiated this action in the Superior Court for the District of Columbia on April 29, 2013, and filed an amended complaint two days later. *See Stovell v. James*, No. 2013 CA 002985 (D.C. Sup. Ct. Apr. 29, 2011); Am. Compl., ECF No. [1-1]. The Plaintiff alleges that in an article published in the April 30, 2012, edition of Sports Illustrated Magazine, Defendant James made the following statement:

> "My father wasn't around when I was a kid, and I use to always say, 'Why me? Why don't I have a father? Why isn't he around? Why did he leave my mother?' But as I got older I looked deeper though, 'I don't know what my father was going through, but if he was around all the time, would I be who I am today?'" James said. "It made me grow up fast. It helped me be more responsible. Maybe I wouldn't be sitting here right now."

Am. Compl. ¶ 4. The Plaintiff does not allege that the article identified him as the Defendant's father. Rather, the Plaintiff alleges that because his first lawsuit "received worldwide media

attention," and "the reports often noted the similarity in appearance between Plaintiff Stovell and Defendant James," some individuals who read Defendant James' statement in Sports Illustrated "learned of the abandonment charge for the first time from the article and associated the abandonment charge with Plaintiff for the first time." *Id.* ¶ 8. The Plaintiff further contends that "others who understood Plaintiff [] to be Defendant['s] father by other means also were exposed" to the Defendant's statement. *Id.* ¶ 9. The Plaintiff asserts claims for defamation and "false light" on the grounds the Defendant "falsely portrayed Plaintiff to the public as an abandoner of his child, unwilling to share in his support and upbringing." *Id.* ¶ 20.

The Defendant removed the action to this Court on May 21, 2013, and subsequently moved to dismiss the Amended Complaint. Specifically, the Defendant argues the Plaintiff failed to state a claim for defamation and false light because the purportedly defamatory statement is either true or a matter of opinion, and the statement could not be understood to reference the Plaintiff. *See generally* Def.'s Mot. to Dismiss, ECF No. [8]. Separately, the Defendant moved for summary judgment on the grounds the Plaintiff's claims are time-barred. *See generally* Def.'s Mot. for Summ. J., ECF No. [9]. The Plaintiff filed memoranda in opposition to both motions, but did not amend his complaint or request leave to conduct discovery before responding to the Defendant's motion for summary judgment. Over one month after the Defendant filed reply briefs in support of his motions, the Plaintiff filed a motion for leave to file a second amended complaint.[2] The Defendant opposes the Plaintiff's motion on the grounds the Plaintiff's amended claims would not survive the pending dispositive motions and the Plaintiff unduly delayed seeking leave to amend his complaint. The Court agrees that the

---

[2] The Court denied without prejudice the Plaintiff's initial motion for leave to amend his complaint filed August 2, 2013, for failing to comply with Local Civil Rule 7(m).

Plaintiff's claims—even considering the proposed amendments—are time barred, and thus does not reach the Defendant's motion to dismiss.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials); or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). When considering a motion for summary judgment, the court may not make credibility determinations or weigh the evidence; the evidence must be analyzed in the light most favorable to the nonmoving party, with all justifiable inferences drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "If material facts are at issue, or, though undisputed, are susceptible to divergent inferences, summary judgment is not available." *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009) (citation omitted).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of a

factual dispute, by itself, is insufficient to bar summary judgment. *See Liberty Lobby*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* For a dispute about a material fact to be "genuine," there must be sufficient admissible evidence that a reasonable trier of fact could find for the nonmoving party. *Id.* The adverse party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute. *See Ass'n of Flight Attendants–CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 465–66 (D.C. Cir. 2009).

### III. DISCUSSION

To state a claim for defamation, the Plaintiff must allege four elements:

> (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

*Blodgett v. Univ. Club*, 930 A.2d 210, 222 (D.C 2007). Similarly, a false light claim "requires a showing of: (1) publicity (2) about a false statement, representation or imputation (3) understood to be of and concerning the plaintiff, and (4) which places the plaintiff in a false light that would be offensive to a reasonable person." *Id.* (citation omitted). "[W]here the plaintiff rests both his defamation and false light claims on the same allegations, as [Plaintiff] has done here, the claims will be analyzed in the same manner." *Id.*; *Shipkovitz v. The Wash. Post Co.*, 571 F. Supp. 2d 178, 183 (D.D.C. 2008).

District of Columbia law provides a one-year statute of limitations for claims of defamation. D.C. Code § 12-301(4). No statutory limitations period is provided for false light

claims, "but where, as here, a stated cause of action is intertwined with one for which a limitations period is prescribed, [courts operating under District of Columbia law] apply the specifically stated period." *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1086 (D.C. Cir. 2007) (citation omitted). Thus, the operative question for the Court is whether the Plaintiff filed suit within one year of the date on which his defamation/false light claim accrued.

"Defamation occurs on publication, and the statute of limitations runs from the date of publication. Where a statement is defamatory on its face, the plaintiff's reputation is damaged immediately upon publication." *Mullin v. Wash. Free Weekly, Inc.*, 785 A.2d 296, 298 (D.C. 2001) (citation omitted). The District of Columbia has adopted the "single publication rule" concerning the accrual of defamation claims, thus, "for purposes of the statute of limitations in defamation claims, a book, magazine, or newspaper has one publication date, the date on which it is first generally available to the public." *Id.* at 298 n.2; *see also Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1087 (D.C. Cir. 2007). "Copies of the original are still part of the single publication but republication in a new edition creates a new publication on the rationale that the intent is to reach a new audience." *Jankovic*, 494 F.3d at 1087.

The statements at issue in this case were published in an edition of Sports Illustrated Magazine with a cover date of April 30, 2012. The Defendant submitted a declaration from Robert Kanell, the Vice President of Operations for the News and Sports Group at Time Inc., which includes Sports Illustrated. Def.'s Ex. A (Kanell Aff.), ECF No. [9-1], ¶ 1. Mr. Kanell explained that the article in question was published on Sports Illustrated's website on April 24, 2012. *Id.* ¶ 2. The digital version of the print magazine was available to the public on April 25, 2012. *Id.* Moreover, despite the cover date, "the actual date that the magazine was published and available on newsstand for sale to the public was five (5) days earlier, on April 25, 2012."

*Id.* Mr. Kanell notes "this is consistent with Sports Illustrated's typical practice," insofar as "[t]he cover date is a Monday but the magazine is available for sale on the Wednesday before that Monday." *Id.*

The Plaintiff offers no evidence to rebut Mr. Kanell. Rather, the Plaintiff offers several arguments in support of the position that his claims are not time barred: (1) publication of the story on the Internet constituted a separate, actionable publication of the purportedly defamatory statements; (2) retailers were not required to make the magazine available for sale until April 30; (3) the distribution of the magazine to print subscribers was not complete until after April 30, 2012; and (4) the Plaintiff did not discover certain evidence until after April 30, 2012. None of these arguments are persuasive.

First, the Plaintiff argues that "[t]he [I]nternet availability of the article during the April 24-25 time frame seems to qualify as a separate, rather than integrated distribution." Pl.'s Opp'n at 2. Presumably the Plaintiff is arguing that the publication of the article on the Internet is not part of a "single publication" with the print magazine, and is thus separately actionable. Noting that the single publication rule "was designed as an accommodation to new forms of communication," the D.C. Circuit has cautioned that "in applying the rule to the Internet, the court must be mindful of the rule's purpose": to avoid "multiplicity of suits," "harassment of defendants," and "possible hardship upon the plaintiff himself." 494 F.3d at 1087. However, the Court need not resolve whether the Internet and print versions of a magazine article are part of a single publication because, as set forth below, the print edition of the magazine was "generally available" prior to April 30, 2012.

Second, the Plaintiff asserts that "newsstands are not required to remove previous editions until the publication date of the new edition (in this case, April 30, 2012)." Pl.'s Opp'n

7

at 2. The Plaintiff offers no evidence to support this contention. The Vice President of Operations for the News and Sports Group at Time Inc., which includes Sports Illustrated, averred under oath that the magazine was available for sale on newsstands on April 25, 2012. In light of the affidavit proffered by the Defendant, the Plaintiff's unsupported assertion is insufficient to create a genuine issue of material fact as to when the relevant issue of Sports Illustrated magazine was available for sale. *Foretich v. Glamour*, 741 F. Supp. 247, 251 (D.D.C. 1990) (finding counsel's mere assertion in a brief that she was informed that a magazine was on sale on a particular date was insufficient to create a genuine issue of material fact as to the publication date of a magazine).

Third, the Plaintiff alleges in the putative second amended complaint that Source Interlink Companies, which purported responsible for "approximately 30% of the distribution of [Sports Illustrated Magazine] to retailers nationwide," began distributing the magazine "on approximately Wednesday April 25, 2012 and ended on approximately Wednesday May 2, 2012." Second Am. Compl., ECF No. [23-2], ¶ 6. The Plaintiff thus argues that because the "integrated distribution of the April 30, 2012 issue date [magazine] . . . did not end until on or after its April 30, 2012 issue date," the Plaintiff's claims are timely. *Id.* Yet the Plaintiff offers no authority for the proposition that a defamation claim does not accrue until distribution of the magazine is *complete*. The relevant date for purposes of the accrual of a defamation claim is "the date the article is made *generally* available for sale." *Foretich*, 741 F. Supp. at 252. The unrebutted declaration of Robert Kanell establishes that date as April 25. According to the Plaintiff, Source Interlink provided the magazine to some retailers beginning on April 25. Even if Source Interlink---which by the Plaintiff's allegation is only responsible for 30% of the distribution of Sports Illustrated magazine to retailers---did not *complete* its distribution until

8

after April 30, there is no genuine dispute that the magazine was "generally available for sale" on April 25.

Fourth, the Plaintiff suggests that "the discovery rule might be applicable" insofar as the Plaintiff "only became aware of the Pharr disclosures a few weeks before he filed [suit]." Second Am. Compl. ¶ 14. In a declaration attached to the Amend Complaint, Rolando Pharr explained that he met the Defendant's mother in December 1984, and that she reportedly told Mr. Pharr that the Defendant's name was derived from a combination of his father's first and middle names, which the Plaintiff argues is evidence the Plaintiff is the Defendant's father. Pharr Aff. ¶ 12. The Plaintiff suggests that he did not file suit until obtaining the Pharr Affidavit because it supported his claim that he is the Defendant's father, but does not claim that he was unaware of the allegedly defamatory statements until 2013. Pl.'s Reply ¶ 6. Regardless, the District of Columbia Court of Appeals has expressly rejected the application of the discovery rule to mass media defamation claims. *Mullin*, 785 A.2d at 299-300. The Plaintiff's claim accrued on April 25, 2012, therefore, the Plaintiff's April 29, 2013, complaint is untimely.

## IV. CONCLUSION

For the foregoing reasons, the Court finds the Plaintiff's claims are untimely. The Plaintiff's defamation and false light claims are intertwined, and thus both are governed by a one-year statute of limitations. Taking the allegations in the putative Second Amended Complaint as true, the unrebutted evidence in the record establishes that the magazine containing the purportedly defamatory statements at issue was generally available for sale on April 25, 2012, making the Plaintiff's April 29, 2013, complaint untimely. Accordingly, the Plaintiff's [23] Request for Leave to File the Verified Second Amended Complaint is DENIED, the Defendant's [9] Motion for Summary Judgment is GRANTED, and the Defendant's [8] Motion

9

to Dismiss is DENIED AS MOOT. An appropriate Order accompanies this Memorandum Opinion.

> /s/
> **COLLEEN KOLLAR-KOTELLY**
> UNITED STATES DISTRICT JUDGE